# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOSEPH LAGANA | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-10-3488 |
| BOBBY SHEARIN | * | |
| Defendant | * | |

## MEMORANDUM OPINION

Pending is Defendant's Motion for Summary Judgment. ECF No. 10. Plaintiff opposes the motion. ECF No. 16. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant's motion shall be granted.

## Background

Plaintiff alleges he entered the Maryland Division of Correction (DOC) in September 2007, to serve a sentence of eight years. At the time he had charges pending against him in Frederick County, Maryland. Plaintiff was initially assigned to medium security status with an open detainer; and was scheduled for transfer to a prison in Hagerstown, Maryland. The day before Plaintiff was scheduled to be transferred, the warden at Maryland Reception Diagnostic and Classification Center (MRDCC) issued an override of the classification teams decision to designate Plaintiff medium security, redesignating him as maximum security. The override was based on the open detainer. Plaintiff was told once the open charges were taken care of he would be reclassified again. With the change in his security designation, Plaintiff's transfer was changed to a transfer to Cumberland, Maryland. ECF No. 1 at p. 6.

Plaintiff arrived at Western Correctional Institution (WCI) in Cumberland after he was sentenced to a concurrent 20 year sentence by the Frederick County court. He states that case

management staff at WCI refused to reclassify him, in violation of DOC policy. Plaintiff claims he "got caught in several adjustment issues" after arriving at WCI because he was not affiliated with a prison gang, making him a target. He alleges he tried to "secure housing that was not gang infested" by refusing housing assignments in areas of the prison that were heavily populated with prison gang members. Plaintiff states he "sought administrative remedies on other unrelated issues" and "got caught up in retaliation, harassment, and intimidation." ECF No. 1 at p. 6.

Plaintiff claims he met with Warden Morgan at the behest of Commissioner Stouffer on December 23, 2009, to try to resolve some of the numerous grievances Plaintiff had filed. Morgan told Plaintiff he did not think he fit the criteria for being housed at WCI and promised to speak with case management staff regarding a reclassification and transfer to Hagerstown. Plaintiff claims Morgan never spoke to case management. *Id*. at p. 7.

Plaintiff claims that Morgan stated he could not control who Plaintiff's cell partners would be. Morgan then advised Plaintiff that inmates coming off of disciplinary segregation were assigned to restrictive housing assignments where mostly gang members were housed and implied it was in Plaintiff's best interest to continue refusing housing until he could get transferred. Plaintiff states that Morgan claimed he could do nothing for him if he was charged with a serious infraction. *Id*.

Plaintiff states he continued to refuse housing assignments as he was advised to do by Morgan, but never heard back from him about a transfer or reclassification. Plaintiff claims he continues to suffer retaliation, intimidation and harassment from both correctional staff and other inmates who are involved with gangs. Plaintiff claims he documented every incident of harassment and intimidation, but his complaints were either ignored or the requests for resolution

were denied. He states this occurred even in cases where the incidents were recorded on surveillance video. Given the lack of response, Plaintiff claims he had no further recourse but to file a civil rights claim in this Court. ECF No. 1 at p. 8.

Plaintiff claims that when he began filing lawsuits, correctional staff denied photocopies for him despite his indigency. This, Plaintiff states, forced him to file more grievances up to the day before his transfer. He claims Tenille Winters certifies "all documents for federal court filings in response to lawsuits" and she would have known in advance of his pending transfer. Plaintiff surmises that denying his requests for photocopies was "an intentional and deliberate act with malice and forethought" by Winters. ECF No. 1 at p. 9.

Morgan's promise to respond to Plaintiff by December 1, 2010, was not kept and Plaintiff claims that Morgan deliberately transferred him to an "Ultra-Maximum Security facility" (North Branch Correctional Institution) for purposes of retaliation and in an effort to circumvent Plaintiff's requests for injunctive relief. Plaintiff claims the transfer to an ultra-maximum security prison increases his punishment in violation of his Eighth Amendment rights, as this type of prison was designed to house the "worst of the worst" inmates who are security threats. Plaintiff claims he does not fit that description because "in three years [he has] had nothing but the lowest grade infractions with no gang affiliations nor security threat issues." Plaintiff claims Morgan is attempting to place his life in jeopardy because the entire facility is controlled by various gangs. ECF No. 1 at pp. 9 – 10.

Plaintiff states since his arrival at North Branch Correctional Institution (NBCI), he has been unable to receive forms for filing a grievance even though they are supposed to be available to inmates on all shifts. When Plaintiff arrived, his medically authorized knee braces and hydrocil fiber packs were confiscated. Plaintiff states he was told the braces would be returned,

but this has not occurred. He states his sick call requests do not result in appointments with medical staff, and several medication refills are missing. Plaintiff seeks an immediate transfer as relief. ECF No. 1 at p. 11.

It is important to note that Plaintiff's claims of being denied medical services and access to forms since arriving at NBCI on December 1, 2010, were written on December 7, 2010, and filed with this Court on December 10, 2010. Defendant notes that Plaintiff filed 34 administrative remedy procedure requests (ARPs) between December 23, 2010 and February 25, 2011. ECF No. 10 at Ex. 6. Additionally, Plaintiff was seen by medical staff on the day he arrived at NBCI. *Id*. at Ex. 4. Defendant admits that Plaintiff's knee braces and medications "were placed in the pharmacy" at the time of his initial intake examination. *Id*. No further information is provided about Plaintiff's knee braces.

With respect to Plaintiff's security classification, Defendant provides a copy of a reclassification instrument dated September 15, 2010, which was used to review Plaintiff's security level while he was confined at WCI. ECF No. 10 at Ex. 1. The classification instrument indicates that Plaintiff's security level was maximum at the time of the review and the score of 4 would mean a recommended increase in Plaintiff's security. The case management team overrode that recommendation because Plaintiff's "overall adjustment d[id] not warrant an increase in security." *Id*. at p. 2. Thus, Plaintiff remained at maximum security classification.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment. *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that

a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim); *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)) ("'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff's claim of retaliatory transfer is based on his assertion that Morgan was attempting to get rid of him before having to respond to Plaintiff's request for injunctive relief made in Civil Action PJM-10-1232. ECF No. 1 at p. 8. Plaintiff states that Morgan was supposed to answer on December 1, 2010. *Id.* There was never a show cause order issued in that case and Morgan's Motion for Summary Judgment was timely filed by counsel on December 22, 2010, three weeks after Plaintiff's transfer. *See Lagana v. Morgan*, Civ. Action PJM-10-1232 (D. Md.) at ECF No. 19. To the extent Plaintiff invites this Court's scrutiny into the appropriateness of his transfer to NBCI, *i.e.,* whether he fits the criteria to be housed there, the Court declines to do so. Transfer of an inmate to another facility does not alone implicate a protected liberty interest even when it results in the loss of opportunities to participate in programs. *See Hewitt v. Helms*, 459 U.S. 460, 467, n. 4 (1983). "An essential tool of prison administration . . . is the authority to offer inmates various incentives to behave." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Plaintiff concedes receiving notices of infraction and disobeying orders to move into assigned housing. ECF No. 1 and 16. Defendant has provided evidence that Plaintiff's security status was reviewed and that it did not change. Indeed, an override was used to avoid increasing Plaintiff's security level. It is not difficult to conclude, based on the

evidence presented, that Plaintiff's transfer to NBCI was not retaliatory. Defendant is entitled to summary judgment on this claim.

## Access to Courts

The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Plaintiff's claim that he is denied access to forms used to file an administrative remedy procedure request (ARP) is a claim that he is denied access to courts. The tools required by *Bounds v. Smith*, 430 U. S. 817, 821 (1977) "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U. S. 343, 355 (1996). Impairment of other capacities to litigate are consequential to incarceration and are constitutionally permissible. *Id*. Plaintiff's assertion that he is denied access to ARP forms is belied by the evidence presented. Defendant provides evidence that Plaintiff has filed numerous ARPs during his stay at NBCI and Plaintiff does not refute that evidence. Additionally, Plaintiff has filed numerous lawsuits in this Court. *See Lagana v. Tessema*, Civ. Action No. PJM-10-3493 (D. Md.); *Lagana v. Morgan et al.,* Civ. Action No. PJM-10-3625 (D. Md.); *Lagana v. Morgan*, Civ. Action No. PJM-11-85 (D. Md.);

*Lagana v. Morgan*, Civ. Action No. PJM-11-218 (D. Md.). Thus, his ability to litigate claims has not been encumbered by the alleged unavailability of ARP forms. Defendant is entitled to summary judgment on this claim.

Eighth Amendment Claims

With respect to Plaintiff's claim concerning his knee braces and his medication, the claim must fail because he has named only Warden Shearin as a Defendant. Shearin is not a medical care professional and, as such, is not charged with the responsibility to provide adequate medical care to Plaintiff. The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has not provided evidence sufficient to conclude that a colorable claim of

supervisory liability could be made against Shearin, and Shearin is entitled to summary judgment on this claim.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendant has exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; s*ee also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Plaintiff alleges that the entire prison is overrun by gangs, but does not include specific instances of threats to his safety. ECF No. 1 and 16. He alleges the entire general population at NBCI is an excessive risk of harm to him. To charge Defendant with the responsibility of providing specialized housing for every prisoner who felt the prison is unsafe is unworkable. A specific known risk of harm is not established by generalized claims such as those raised by Plaintiff, nor has Plaintiff presented evidence of a pervasive risk of harm which has been ignored by Defendant. Plaintiff has failed to establish an Eighth Amendment claim and Defendant is entitled to summary judgment on this claim.

Plaintiff raises a new claim in his opposition concerning an alleged retaliatory assault. ECF No. 16 at p. 15. He states he was pepper-sprayed after he refused to remove his arm from the feed-up slot on his cell door. *Id.* Raising a new claim after a dispositive motion has been filed is not permitted unless Plaintiff obtains permission from the opposing party or leave from this Court to do so. The claim will, therefore, be dismissed without prejudice. *See* Fed. R. Civ. Proc. 15 (a)(2).

A separate Order shall be entered in accordance with this Memorandum Opinion.

July 11, 2011

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE